UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**LANCE SELLERS,**

    **Plaintiff,**

**COMPLAINT WITH
DEMAND FOR JURY TRIAL**

vs.

CASE NO.:_____

**LOUIS S. ROBERTS, III, individually, and
in his official capacity as
Sheriff of Jackson County, Florida, and
(former) Deputy Sheriff
ZACHARY WESTER, individually,**

    **Defendants.**

## COMPLAINT

Plaintiff, LANCE SELLERS (hereinafter "SELLERS") sues LOUIS S. ROBERTS, III, individually, and in his official capacity as Sheriff of Jackson County, Florida (hereinafter "ROBERTS"), and (former) Deputy Sheriff ZACHARY WESTER, individually (hereinafter "WESTER")

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 [42 U.S.C. § 1983]. This court has jurisdiction under and by virtue of 28 U.S.C. §§ 1331, 1343 and 1367.

2. Venue is proper pursuant in the Northern District of Florida pursuant to 28 U.S.C. § 1391 (b) in that the Northern District of Florida is the judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

3. Plaintiff SELLERS is an adult and a resident of Florida.

4. Defendant ROBERTS is an adult and a resident of Florida.

5. Defendant WESTER is an adult and a resident of Florida.

6. Since 2008, ROBERTS has been the Sheriff of Jackson County, Florida.

7. ROBERTS is the final policymaking authority in matters of law enforcement for the Jackson County Sheriff's Office ("JCSO") in Jackson County, Florida. He is responsible for, among other things, hiring, training, and supervising JCSO Deputy Sheriffs, and for establishing, enforcing, and, if necessary, revising the policies, procedures, and customs and practices of JCSO.

8. At all times material to the claims herein WESTER was employed as a sworn Florida state law enforcement officer employed as a Deputy Sheriff for the JCSO.

9. At all times material, WESTER worked under the supervision and control of ROBERTS.

10. On November 22, 2016, SELLERS was traveling on Highway 71 in Marianna, Florida.

11. On November 22, 2016, WESTER was traveling in the opposite direction of the SELLERS' vehicle and said in his report of the traffic stop that he decided to stop SELLERS' because the driver was allegedly not wearing a seatbelt.

12. On November 22, 2016, after WESTER pulled over the vehicle, WESTER got out of his patrol vehicle and immediately ordered SELLERS to step out of his vehicle. After ordering SELLERS to the ground, and using "defensive tactics techniques to gain control of SELLERS", WESTER began searching SELLERS' vehicle.

13. On November 22, 2016, according to WESTER's affidavit, while searching the vehicle, WESTER:

> "observed a white in color plastic tube sticking out from [a] jacket. I observed that the plastic tube has a crystalized substance around the opening on one end. A field test did return presumptive positive for methamphetamine. I also observed a glass pipe conducive (sic) with those used for inhaling narcotics. Inside of the pipe I observed a clear plastic baggie adjacent to the camouflage jacket laying in the front passenger seat. The baggie did contain a green leafy residue which field tested presumptive positive for marijuana."

14. The stop was pretextual, lacked probable cause, and even lacked reasonable suspicion to believe SELLERS was involved in any violation of the law.

15. WESTER stopped the vehicle to illegally plant methamphetamine in SELLERS' vehicle and to make it appear SELLERS was committing a

violation of the law, when in fact WESTER was illegally possessing methamphetamine, a Schedule II, Controlled substance [21 U.S.C. § 812], and claiming to have found it during the search of SELLERS' vehicle.

16. WESTER possessed, and then delivered the methamphetamine WESTER illegally possessed by placing it in SELLERS' vehicle and in turn reporting he found it in SELLERS' vehicle turning it in as evidence against SELLERS.

17. WESTER has no privilege to possess methamphetamine.

18. WESTER has no legal justification to possess methamphetamine.

19. WESTER had no necessity to possess methamphetamine.

20. WESTER was not engaged in a "sting" operation when he stopped SELLERS' vehicle.

21. WESTER had no privilege to place methamphetamine in SELLERS' vehicle.

22. WESTER had no legal justification to place methamphetamine in SELLERS' vehicle.

23. WESTER had no necessity to place methamphetamine in SELLERS' vehicle.

24. WESTER was not engaged in a "sting" operation when he stopped SELLERS' vehicle and placed the methamphetamine in SELLERS' car.

25. The fact pattern(s) that WESTER continued to recite again and again in his reports as to how he found controlled substances time and time again should have alerted WESTER's supervisor and ROBERTS to his illegal conduct.

26. Defendant ROBERTS (who in his Florida Sheriff's Department biography states he had a prior assignment as a Lieutenant in C.I.D., presumed to be Criminal Investigation Division, i.e. in common parlance a detective) should have known that a patrol officer just does not get lucky time and time again under the same circumstances in finding controlled substances without engaging in a pattern and practice of violating persons constitutional rights and/or framing people.

27. Ultimately, WESTER was caught on his own body camera planting evidence to frame people.

28. WESTER's illegal conduct continued for months and was allowed to continue by Defendant ROBERTS.

29. ROBERTS had a duty to review the body cameras and talk with anyone WESTER was working with to determine if WESTER's proclivity for finding controlled substances on traffic stops was the result of criminal activity on WESTER's part.

## COUNT I
## 42 U.S.C§ 1983 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS
## (WESTER)

30. Plaintiff realleges paragraphs 1 through 29 above and incorporates them by this reference as is recited in full.

31. WESTER's actions on November 22, 2016 occurred within the scope of his employment with the JCSO and under color of state law.

32. WESTER knew or should have known, and every reasonable deputy sheriff in his position would have concluded, that there was no reason to stop SELLERS' vehicle or arrest SELLERS, as there was no probable cause or reasonable suspicion to believe SELLERS was committing a crime at any time while he was observed by WESTER.

33. WESTER had a legal duty to use only that amount or degree of force against SELLERS as was reasonable and necessary under the circumstances. Pursuant to the written policies of JCSO, national police standards, and federal and state constitutional law, a police officer cannot use "excessive force," often defined as a level of force inappropriate to the circumstances, against members of the public.

34. On November 22, 2016, WESTER used excessive and unnecessary amount of force against SELLERS, which was objectively unreasonable in light of the fact and circumstances confronting WESTER and did not involve a

rapidly evolving situation other than that created by WESTER, particularly considering that (a) he lacked reasonable suspicion or probable cause, (b) the alleged violation was a traffic infraction not even involving an accident, (c) SELLERS posted no immediate threat to the safety of WESTER or any other person; and (d) SELLERS was not actively resisting arrest or attempting to evade arrest by flight.

35. WESTER knew or should have known, and every reasonable officer in that position would have concluded, that the force he used against SELLERS was unlawful, given the seizure was unlawful.

36. WESTER violated SELLERS' constitutional rights to be secure in his person, free from unreasonable seizure and from the use of excessive force.

37. These violations were of a type and character as to which any reasonable person would be aware, and further, the law prohibiting such conduct as unconstitutional is clearly established.

38. WESTER acted knowingly, intentionally, and maliciously, and/or with a reckless or callous indifference to the federally protected rights of SELLERS.

39. As a direct and proximate result of WESTER's violation of SELLERS' civil rights, SELLERS has suffered damages, including mental anguish, pain and suffering, disability, emotional distress, humiliation, embarrassment, and

loss of earnings. The losses are permanent and/or continuing and SELLERS will continue to suffer losses in the future.

40. Plaintiff has retained the undersigned attorneys to prosecute this action on his behalf and has agreed to pay them a reasonable fee and to reimburse the cost of this action.

**WHEREFORE**, Plaintiff demands judgment against WESTER for compensatory and punitive damages, cost, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems appropriate.

## COUNT II
## 42 U.S.C § 1983 DEPRIVATION OF PLANTIFF'S CIVIL RIGHTS
## (ROBERTS)

41. Plaintiff realleges paragraphs 1 through 40 above and incorporates them by this reference as is recited in full.

42. At all material times, ROBERTS was responsible for JCSO, its agents and employees, including supervising, overseeing, training and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law.

43. At all times material hereto, ROBERTS was charged with the responsibility of adopting and implementing rules, policies, practices, customs, and procedures for the proper and efficient maintenance, supervision, and control of JCSO Deputy Sheriffs. These duties include, but are not limited to:

(a) To create, adopt, and implement rules, regulations, practices, and procedures, towards hiring, supervising, and retaining law enforcement officers who do not have a propensity towards the excessive use of force;

(b) To create, adopt and implement rules and regulations, practices and procedures, for proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure the utilization of a force continuum which prevents any propensity towards excessive force, and which ensures that the least amount of force would be utilized to maintain order and control;

(c) To create, adopt, and implement rules and regulations, practices and procedures for proper policing, ensuring elimination of improper "stop and frisk" tactics without reasonable suspicion or probable cause;

(d) To create, adopt, and implement rules and regulations, practices, and procedures for the proper and efficient supervision, control, discipline, and assignment of law enforcement officer in a way and to an extent necessary to ensure that citizens will not be subjected to unnecessary force and unlawful search and seizures by the agents and employees of the JCSO; and

 (e) To implement rules, regulations, policies, practices, and procedures for the proper and efficient supervision, discipline, control, and investigation of law enforcement officers to reduce or eliminate instance of untruthfulness, including unlawful use of force and illegal searches and seizures and instances of corroboration or ratification of untruthful accounts of excessive force events committed by fellow law enforcement officers.

44. ROBERTS owed a legal duty to SELLERS to exercise reasonable care in hiring, training, and retaining safe and competent employees. SELLERS was in the zone of risk that was reasonably foreseeable to ROBERTS. ROBERTS breached that duty and the breach caused SELLERS' damages.

45. In addition, ROBERTS, with deliberate indifference to the possibility of SELLERS' injuries, has encouraged the well-settled policy, practice, and custom of using "stop and frisk" tactics, absent any reasonable suspicion or probable cause to believe that these individuals have committed a criminal act, in Jackson County, Florida. This invariably involves, in particular and in particular and in disproportionate number of traffic stops, thereby resulting in Deputy Sheriffs, such as WESTER, engaging in the unwarranted use of "stop and frisk" tactics. Despite knowing of the unconstitutional behavior and the need to take corrective action, ROBERTS has failed to do so.

46. ROBERTS has also, with deliberate indifference as to the possibility of SELLERS' injuries, failed to adequately train or otherwise supervise and direct JCSO and its Deputy Sheriffs concerning the rights of the citizens they encounter in their duties, such that it is a well-settled policy, practice, and custom for Deputy Sheriffs, including WESTER, to take extreme and reckless actions against the citizens of Jackson County they encounter, including SELLERS, all in the name of law enforcement, resulting in Deputy Sheriffs violating the constitutional rights of innocent citizens.

47. ROBERTS was on notice, by this history of widespread abuse, of the need to correct the well-settled policy, practice, and custom of WESTER's extreme and reckless actions against the citizens of Jackson County. The need for more or different training had been so obvious and the inadequacy of same, combined with ROBERTS' conscious choice not to act, has resulted in the violation of constitutional rights, including, but not limited to the deprivation of SELLERS' civil rights.

48. In further disregard of the citizens of Jackson County, ROBERTS has, with deliberate indifference, either failed to direct, failed to otherwise fully require, or has sought to limit, JCSO and others in the proper investigation of the extreme and wanton acts of WESTER, such that it is the well-settled policy, practice, and customs of JCSO to limit internal investigations, with few or no

serious questions ever raised as to WESTER's decision to conduct illegal search and seizures. Despite knowing of this behavior and the need to take corrective action, ROBERTS declined to do so.

49. By limiting and/or failing to properly investigate, resulting in finding of no illegal searches and seizures and the justification for WESTER's extreme actions, by encouraging the well-settled policy, practice, and custom of using "stop and frisk" tactics, absent any reasonable suspicion or probable cause to believe that these individuals have committed a criminal act, and through allowing the well-settled policy, practice, and custom of Deputy Sheriffs' extreme and reckless actions against the citizens of Jackson County, ROBERTS has ratified, condoned, consented to WESTER's unlawful conduct, specifically including the unlawful conduct of WESTER as to SELLERS. The ratification, condoning of, and consenting to, prior unlawful conduct of WESTER served as an inducement to WESTER to violate SELLERS' civil rights, and to ratifications, condoning of, and consenting to the violation of SELLERS' civil rights confirmed that WESTER's conduct conformed with ROBERTS's policy, practice, and procedure.

50. ROBERTS was on notice of the history of failing to properly investigate (and thus address and correct) the extreme and wanton acts of WESTER and failed to do so, leading to SELLERS' deprivation of civil rights. The deprivations of

civil rights, of which the circumstances described herein were a material part together constituted a widespread pattern sufficient to notify ROBERTS and were obvious, flagrant, rampant, and of continued duration rather than isolated occurrences.

51. As described more fully above, WESTER has a history of reports of illegal search and seizures and violations of citizens' rights, of which ROBERTS was aware. WESTER was not counseled on correction of such excessive use of force causing injuries by his supervisors, including ROBERTS. ROBERTS knew or should have known WESTER had a propensity for misconduct, including excessive use of force by subjecting citizens to illegal searches and seizures and subsequent illegal arrests against members of the public. Instead, ROBERTS ratified and condoned WESTER's unlawful behavior, which was a moving force and/or proximate cause of injuries to SELLERS.

52. The actions committed by WESTER against SELLERS were proximately caused by the well-settled policies, customs, practices, and procedures of ROBERTS in failing to fulfill his duties as alleged herein, which was also the moving force behind WESTER violating SELLERS' civil rights.

53. The actions to the well-settled policies, customs, practices, and procedures referenced above, ROBERTS was grossly negligent, reckless, or deliberately indifferent to the health, safety, and welfare of SELLERS, in that ROBERTS

expressly acknowledged and assented to the failure to properly train, supervise, control, conduct proper investigation into prior excessive behavior, screen and review for continued employment, the person and conduct of WESTER. As a result, ROBERTS knew or had reason to know that WESTER would act unlawfully and he failed to stop WESTER's actions, resulting in the violation of SELLERS' civil rights.

54. The above-described, well-settled customs and policies demonstrate a deliberate indifference on the part of ROBERTS, as the policymaker of JCSO, to the constitutional rights of persons within Jackson County, and were a moving force or proximate cause of violations of SELLERS' rights alleged herein. Despite knowing of the unconstitutional behavior and the need to take corrective action, ROBERTS had declined to do so.

55. As a direct and proximate result of ROBERTS' actions and inactions, under color of state law, and in violation of 42 U.S.C.§ 1983, SELLERS was deprived of his constitutional rights to be secure in his person, free from unreasonable seizure and from the use of excessive force.

56. As a direct and proximate result of the violation of SELLERS' civil rights, SELLERS has suffered damages, including mental anguish, emotional distress, humiliation, embarrassment, loss of earnings. The losses are

permanent and/or continuing and SELLERS will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff demands judgment against ROBERTS for compensatory damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the court deems appropriate.

Respectfully submitted this 20th day of December, 2018.

                        **THE PRICE LAW FIRM,**

                        */s/ William B. Price*
                        **William B. Price, Esq**.
                        Florida Bar No.: 28277
                        **Turner A. Rouse, Esq.**
                        Florida Bar No.: 109247
                        731-A Airport Road
                        Panama City, FL 32405
                        bill@thepricelawfirm.com
                        turner@thepricelawfirm.com
                        hannah@thepricelawfirm.com
                        Counsel for Plaintiff

            **PLAINTIFF DEMANDS TRIAL BY JURY**